CHIVAS v KOEHLER

Docket No. 55689. Submitted March 16, 1982, at Detroit.—Decided
January 21, 1983. Leave to appeal applied for.

Martin D. Chivas, a police officer for the City of Troy, while off-
duty, was shot and killed as he attempted to investigate a
suspected gas station robbery. Two escapees from a minimum
security prison facility near Marquette, Michigan, were subse-
quently recaptured, tried for, and convicted of the murder.
Lawrence M. Chivas, administrator of the estate of Martin D.
Chivas, filed suit against Theodore Koehler, the warden of
Marquette Prison, and other employees of the Department of
Corrections in Oakland Circuit Court alleging that defendants
were negligent in their duty toward the deceased in that they
wrongfully, wilfully, and wantonly permitted the inmates to
escape and go free. Defendants filed a motion for accelerated
judgment and an alternative motion for summary judgment on
the basis of governmental immunity. The court, William John
Beer, J., denied both motions, holding that the statutory provi-
sion upon which the defendants relied exempts from tort
liability only governmental agencies and does not extend im-
munity to individual employees. Defendants appeal by leave
granted. *Held:*

1. Plaintiff's complaint fails to state a cause of action upon
which relief can be granted. Judicially propounded common-law
immunity from tort liability exists for individual governmental
employees. Defendants' motion for summary judgment should
have been granted since there are no well-pleaded allegations
which might support a factual determination that in the course
of the actions complained of any defendant acted other than in
the scope of his employment.

2. The decision of the trial court is reversed and an order is

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 61A Am Jur 2d, Pleading §§ 230, 231.
[4, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 28.
　63 Am Jur 2d, Public Officers and Employees § 287 *et seq.*
[5, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 27
　*et seq.*
[6] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 86,
　88.

to be entered granting summary judgment in favor of all defendants.

Reversed.

1. GOVERNMENTAL IMMUNITY — TORTS — SUMMARY JUDGMENT.

A motion for summary judgment for failure to state a cause of action upon which relief can be granted is the proper way to raise the issue of governmental immunity in a tort action (GCR 1963, 117.2[1]).

2. GOVERNMENTAL IMMUNITY — JUDGMENTS — MOTIONS — SUMMARY JUDGMENT.

A plaintiff faced with a defendant's motion for summary judgment based upon governmental immunity has the burden of pleading facts in avoidance of immunity.

3. GOVERNMENTAL IMMUNITY — SUMMARY JUDGMENT.

The test used to decide a motion for summary judgment for failure to state a cause of action upon which relief can be granted when governmental immunity is at issue is whether the specific tortious activity alleged against the state or its agencies, when examined in a light most favorable to the plaintiff, falls within the exercise or discharge of a governmental function (GCR 1963, 117.2[1]).

4. GOVERNMENTAL IMMUNITY — GOVERNMENTAL OFFICIALS — GOVERNMENTAL TORT LIABILITY ACT — COMMON LAW.

The governmental tort liability act does not provide any immunity to governmental officials; however, the common law has recognized that governmental officials have a limited immunity from liability for torts (MCL 691.1401 *et seq.;* MSA 3.996[101] *et seq.).*

5. GOVERNMENTAL IMMUNITY — JAILS — OPERATION AND MAINTENANCE OF JAILS — GOVERNMENTAL TORT LIABILITY ACT.

The operation and maintenance of a jail is within the scope of the performance of a uniquely governmental function which is accorded immunity from tort liability under the governmental tort liability act (MCL 691.1407; MSA 3.996[107]).

6. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — INDIVIDUAL IMMUNITY — SCOPE OF EMPLOYMENT.

The proper test to apply to ascertain individual immunity to liability for torts, once it has been determined that the individual's governmental agency-employer is engaged in the exercise or discharge of a governmental function, is merely whether the

individual employee was acting within the scope of his employment; if so, he cannot be held liable.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Kathleen L. Bogas),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey,* Assistant Attorney General, for defendants.

Before: BRONSON, P.J., and R. M. MAHER and J. R. ERNST,* JJ.

PER CURIAM. Defendants appeal by leave granted from an order of the trial court denying their motion for accelerated judgment and alternative motion for summary judgment. The matter is submitted to this Court upon a certified statement of facts, GCR 1963, 806.3(3).

Plaintiff's decedent, a police officer, while off-duty, was shot and killed while attempting to investigate a suspected gas station robbery. Joseph Molinari and Gordon Stockenauer, escapees from Magnum Farm, a minimum security prison facility, were subsequently recaptured, tried for, and convicted of the murder.

According to the concise statement of facts:

"Decedent's administrator brings this suit against Perry Johnson, then and now the Director of the Michigan Department of Corrections; Robert Brown, Jr., then and now the Deputy Director of the Michigan Department of Corrections in Charge of Correctional Facilities; Theodore Koehler, then and now the Warden of Marquette Branch Prison; Ronald E. Gach, then Superintendent of the Michigan Intensive Program Center; Gary Wells, who was the acting warden of the Marquette Branch Prison from October 15, 1973, until April

* Circuit judge, sitting on the Court of Appeals by assignment.

7, 1974, at which time Theodore Koehler was officially appointed warden but did not take over his duties until April 15, 1974; Raymond Buchkoe, who was the warden until November 4, 1973, at which time he retired; and James Oxenford and Tom Sharland who were the two guards on duty in the barracks at the Magnum Farm on April 19, 1974, when the escape took place."

A motion for summary judgment, GCR 1963, 117.2(1), is the proper way to raise the issue of governmental immunity in a tort action. *Galli v Kirkeby,* 398 Mich 527, 532; 248 NW2d 149 (1976) (opinion of WILLIAMS, J.); *McCann v Michigan,* 398 Mich 65, 77; 247 NW2d 521 (1976) (opinion of RYAN, J.); *Butler v Wayne County Sheriff's Dep't,* 75 Mich App 202; 255 NW2d 7 (1977). Further, when governmental immunity forms the basis of the motion, the burden is upon the plaintiff to plead facts in avoidance of immunity. *Furness v Public Service Comm,* 100 Mich App 365; 299 NW2d 35 (1980); *Armstrong v Ross Twp,* 82 Mich App 77; 266 NW2d 674 (1978). And, as stated in *Butler, supra,* pp 203-204:

"When governmental immunity is at issue, the test used to decide a motion for summary judgment under GCR 1963, 117.2(1) is whether the specific tortious activity alleged against the state or its agencies, when examined in a light most favorable to the plaintiff, falls within the 'exercise or discharge of a governmental function'. MCL 691.1407; MSA 3.996(107); *Galli v Kirkeby,* 398 Mich 527, 536-537; 248 NW2d 149, 152 (1976) (opinion of WILLIAMS, J.)."

Plaintiff argued and the trial court held that the statutory provision upon which defendants necessarily rely exempts from tort liability only governmental agencies, defined by MCL 691.1401(d); MSA

3.996(101)(d) as "the state, political subdivisions, and municipal corporations", and does not extend immunity to individual employees. Plaintiff argues further that, even if this Court is to determine that statutory immunity may exist for employees of immune governmental agencies, such immunity is not available to these defendants due to the ministerial nature of their duties in issue.

Defendants argue that both the Michigan Supreme Court and this Court have in numerous decisions held that individual governmental employees may be protected by the governmental immunity statute, citing *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979); *Bush v Oscoda Area Schools,* 405 Mich 716; 275 NW2d 268 (1979); *Vargo v Svitchan,* 100 Mich App 809; 301 NW2d 1 (1980); *Cook v Bennett,* 94 Mich App 93; 288 NW2d 609 (1979), and that their complained-of actions fall within the purview of these decisions.

In *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976), five members of the Supreme Court joined in declaring the traditional common-law judge-made immunity of the state and its instrumentalities to be abrogated. Simultaneously, in *Pittman* and *Thomas v Dep't of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), the Supreme Court has acknowledged the jurisdiction of the Legislature to determine whether, and to what extent, there should be governmental immunity. 1970 PA 155, amending 1964 PA 170; MCL 691.1407; MSA 3.996(107). This section provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity

of the state from tort liability as it existed heretofore, which immunity is affirmed."

Plaintiff has acknowledged that there is no statutory provision which extends immunity from tort liability to individual governmental employees. The Legislature has expressly recognized the existence of potential liability of an officer or employee for damages caused by the officer or employee while in the course of his employment and while acting within the scope of his authority. MCL 691.1408; MSA 3.996(108). Therefore, such immunity from tort liability on behalf of the individual governmental employee as exists must be of necessity a product of judicially propounded common law.

We take note that even those justices who would most closely restrict the scope of the term "exercise or discharge of a governmental function" have acknowledged the continued existence of the immunity of certain governmental employees.

"While the governmental tort liability act does not provide any immunity to governmental officials, the common law has recognized that governmental officials have a limited immunity." *Lockaby, supra,* p 78 (opinion by LEVIN, J., KAVANAGH and FITZGERALD, JJ., *concurring).*

However, the attempt to glean from the several opinions in *Lockaby, supra,* and *Bush, supra,* a consensus test for determining when public employees are protected from tort liability through governmental immunity has been both anathema and enigma to this Court, the trial bench and bar.

It is now well-settled that operation and maintenance of a jail is within the scope of the performance of a uniquely governmental function which

is accorded immunity from tort liability under provisions of MCL 691.1407; MSA 3.996(107). *Lockaby, supra; Spruytte v Dep't of Corrections,* 82 Mich App 145; 266 NW2d 482 (1978); *Siess v Bureau of Pardons & Paroles,* 74 Mich App 613; 255 NW2d 2 (1977); *Wojtasinski v Saginaw,* 74 Mich App 476; 254 NW2d 71 (1977); *Green v Dep't of Corrections,* 30 Mich App 648; 186 NW2d 792 (1971), *aff'd* 386 Mich 459 (1971).

A number of the opinions of this Court have determined immunity of the individual governmental employee by application of the discretionary-ministerial dichotomy expounded by Justice COOLEY in the leading case of *Wall v Trumbull,* 16 Mich 228 (1867). See *Willis v Nienow,* 113 Mich App 30; 317 NW2d 273 (1982); *Fiser v Ann Arbor,* 107 Mich App 367; 309 NW2d 552 (1981); *Vargo, supra; O'Toole v Fortino,* 97 Mich App 797; 295 NW2d 867 (1980); *Cook, supra; Siess, supra.*

More recently, however, a discernible trend has emerged for the recognition of Judge BASHARA's analysis in *Cook v Bennett, supra (dissenting and concurring opinion),* as illuminated by Judge BRONSON's majority opinion in *Gaston v Becker,* 111 Mich App 692; 314 NW2d 728 (1981). See *Lewis v Beecher School System,* 118 Mich App 105; 324 NW2d 779 (1982).

These cases held that, once having determined that the governmental agency-employer is engaged in the exercise or discharge of a governmental function, the proper test to apply to ascertain individual immunity is merely whether the individual employee was acting within the scope of his employment. If so, he cannot be held liable.

We note that in *Everhart v Roseville Community Schools Bd of Ed,* 108 Mich App 218; 310 NW2d 338 (1981), cited by Chief Judge DANHOF in

*Lewis, supra,* as well as in *Fuhrmann v Hattaway,* 109 Mich App 429; 311 NW2d 379 (1981), this Court, while applying the analysis of Judges BASH-ARA and BRONSON, alternatively considered these cases under the "ministerial-discretionary duties" approach.

Plaintiff has charged that defendants Koehler, Wells, and Buchkoe negligently assigned prisoners Molinari and Stockenauer to Magnum Farm; that defendants Oxenford and Sharland failed to implement security protocol and to make an immediate search and capture of the escaped inmates; and that defendant Brown (as Deputy Director of the Michigan Department of Corrections in charge of correctional facilities), and defendant Gach (as acting warden of Marquette Branch Prison at the time of the incident) were negligent in supervising the functioning of the prison in recommending and approving the assignment of prisoners Molinari and Stockenauer to Magnum Farm and in monitoring the behavior of the inmates.

Applying the rationale of *Gaston, supra,* and of the dissenting and concurring opinion in *Cook, supra,* to the complaint filed against the individual defendants in the instant proceeding, it is readily apparent that there are no "well-pleaded allegations" which might support a factual determination that in the course of the actions complained of any defendant acted other than in the scope of his employment. Defendants may have made a mistake in the assignment or transfer of prisoners Molinari and Stockenauer to a minimum security facility, but such determination was within the scope of their authority. MCL 791.264, 791.265; MSA 28.2324, 28.2325. Consequently, the complaint fails and defendants' motion for summary judgment should have been granted.

Furthermore, even if defendants' actions were analyzed in terms of the discretionary-ministerial

dichotomy as argued by the parties, the results would not differ. The assignment and transfer or retransfer of individual prisoners among the several penal institutions are clearly discretionary acts comparable with decisions involving parole. *Siess, supra.* So also are guards' decisions made in the heat and course of attempts to apprehend escapees. See *Fiser, supra.*

In any event, the decision of a majority of the Supreme Court in *Lockaby, supra,* is controlling in the present case. Justice COLEMAN, concurring with Justice MOODY and joined by Justice RYAN, held:

"These allegations, which involve ordinary claims of negligence, do not state a claim in avoidance of governmental immunity against any of the defendants. *The operation and maintenance of a jail is a governmental function, and the immunity statute, MCL 691.1407; MSA 3.996(107), provides legislatively mandated immunity for negligence occurring in the exercise or discharge of such functions.* Thus, the county is immune. In addition, as noted by Justice MOODY in his opinion in the case at bar, *the county's officers and employees, while acting in the scope of their employment operating and maintaining a jail, are likewise immune." Lockaby, supra,* p 79 (emphasis added).

Justice WILLIAMS ruled:

"Finally, I must dissent to reinstatement of Count II. That count is captioned 'Negligence', and pleads negligent conduct occurring within the jail. Maintaining a jail is a governmental function and negligent discharge of a governmental function is not excepted from governmental immunity." *Lockaby, supra,* p 83.

The decision of the trial court is reversed and an order is to be entered granting summary judgment in favor of all defendants. No costs to be taxed, a public question being involved.